Case number 18-3194, Donald Harker III v. PNC Mortgage Company. Argument not to exceed 15 minutes per side. Ms. Bauer, you may proceed for the appellant. Good morning, Your Honors. May it please the Court, Amelia Bauer on behalf of Appellant PNC Mortgage. I'd like to reserve five minutes, if I may, please. You may. Your Honors, we all know that historically in Ohio, defectively executed mortgages were deemed not to be recorded when challenged by a bona fide purchaser for value. Those challenges came under Ohio Revised Code Section 5301.25a, which says all properly executed documents when recorded create constructive notice, but they do not create constructive notice as against a bona fide purchaser. In 2013, the Ohio Legislature codified and enacted a new law called Revised Code Section 1301.401, and the new law basically says all documents can be recorded, and when they're recorded, they create constructive notice. That statute went up to the Ohio Supreme Court on certified questions from Judge Caldwell in the Southern District Bankruptcy Court, and as a result of the decision on certified questions in Messer, the Court ruled that 1301.401 creates constructive notice to the world of all recorded instruments. I will also note that the Court, Judge Lanzinger said that the statute applies, is not in contradiction with 5301.25a, but it's also not in contradiction with anything else in the revised code. So post 1301.401, where are we, becomes the question. The trustees have basically, bankruptcy trustees, have conceded that they cannot challenge mortgages any longer using 544a. In particular, one trustee that has three pending cases, including this one, concluded that the statute didn't affect 544a.1 and his rights as a hypothetical judgment lien creditor. I have two issues with that. One is 544a is a notice statute. As Judge Caldwell said in the bankruptcy decision in Messer, 544a is subject to constructive notice. So the only means by which a trustee can attack using 544a.1 or a.3 is to not have notice. And as the bankruptcy appellate panel said in the periandry case, trustees are subject to constructive notice. So we can't exempt out 544a.1 from the notice provisions of 1301.401. The second issue, which has caused more angst, and I think is what caused the bankruptcy court and the BAP some issues, is under Ohio law, judgment lien creditors are not bona fide purchasers for value. So what does that mean? They have no right to attack under 5301.25a, which specifically reserves the challenge to mortgages by other mortgages or bona fide purchasers. If they can't attack as bona fide purchasers under 1301.401, if they can't attack as judgment lien creditors, a trustee is barred from challenging a mortgage that was recorded prior to his lien, simply because, as in this case, the acknowledgement lacks the names of the borrowers. Historically, the cases cited by the trustee tell us that mortgages could be challenged. This court is well aware. I've been here a few times on those cases. But if the court looks at the jurisprudence in this area, those cases are all brought under 544a.3 or at least decided under 544a.3. Back in the early days of the single witness cases, we did have some A-1 challenges. None of those survived past the level of the bankruptcy court. And as Judge Batchelder told us in Zaptocki, bankruptcy court decisions are not precedential as far as this court is concerned. So it is our contention, Your Honors,  and or for judgment on the pleadings, because 544a.1 knocks out his ability to challenge us as a judgment lien creditor. I think the bankruptcy appellate panel decision kind of conflated the error in concluding that 1301.401 doesn't deal with priority because, in fact, it does. Because a judgment lien creditor can't attack a mortgage, the fact that the mortgage is filed prior to the judgment lien date, which is considered to be the date the petition is filed, means the mortgage has priority over the trustee's hypothetical lien under Section 544a.1. So I would ask the court to reverse the decision of the bankruptcy court and grant our motion to dismiss and or for judgment on the pleadings. Thank you, Your Honors. Thank you. Good morning, Your Honors. Walter Reynolds here on behalf of the appellee, Donald Harker, the Chapter 7 trustee. With respect to the issues in this case, I believe that they can all be decided based upon the Supreme Court case of White v. Dentman. This is a case that was decided in 1847, and that case has been on the record for 171 years, and it was decided, as I said, by the Ohio Supreme Court. Now, here's what that case said. It said very clearly that a defective mortgage recorded prior to three judgment creditors with liens could not be reformed in order to have priority over those judgment creditors' liens. So we had a situation where we had a defective executed mortgage that was recorded first, and then we had three subsequent judicial liens, and what the Supreme Court of Ohio said is that those lien creditors had priority. Now, with respect to White, it is old law. It's been on the record for 171 years, and it has withstood the test of time. It has never been modified. It has never been reversed by the Ohio Supreme Court. And as this court has held before, the powers of a Chapter 7 trustee as the hypothetical lien creditor under 544A1 are derived from the laws of the State of Ohio. So if the laws of the State of Ohio provide that a judicial lien creditor, even though filed after a defective mortgage, nevertheless has priority, this bankruptcy court has to find that the trustees' power under 541A1 still are there. Now, I think that at that point in time, we could stop and allow the Supreme Court decision from White to be precedential in this case, but there is more. The decision of Judge Walter, the bankruptcy judge, what he did, he decided to go back through the history of Ohio law and looked at how Ohio came to treat judicial lien creditors versus bona fide purchaser for value. The bankruptcy judge in this case? That's right. The bankruptcy judge in this case. And he wrote a wonderful decision, and he did all the analysis. Yes. But in this case, he really did. He even looked, he even decided to go contrary to the decision in the Messer case. He respectfully disagreed, but he explained why he disagreed, and that's where the history was very important. That's correct. That's correct. And he explained why it was very important. And it's kind of interesting, when the appeal went up to the BAP, the BAP was so impressed. If you look at the decision of the BAP, a lot of the things that Judge Walter had concluded in the trial, the BAP also agreed with. So what we have here is a situation where I think that the issue that really bothers them to the appellants is the fact that under Ohio law, the rights of a judicial end creditor are treated differently than a bona fide purchaser for value. Now, I don't know why the Ohio legislature decided to do that. Does it make sense to us? I'm not sure it does. And the reason why I said I'm not sure it does is because on April the 6th, 2017, the Ohio legislature decided to enact legislation that if you really read that legislation, it seems to say that we're going to treat a judicial end creditor and a bona fide purchaser for value the same way. Up until that time, it seems like the case law said that it made no difference if a judicial end creditor had notice, constructive or actual. If you filed that lien and recorded that lien and a defective mortgage was already a record, you had priority over that. That was Ohio law. There's no question that the new law is retroactive to this case. There is no question that the new law is not retroactive to this case. That's correct. Judge Walters, even though – It's clear that it's not retroactive. That's correct, Your Honor. I think that was the position of both Judge Walters and also the BAP. And I have not found any case – It's not contested in this case. It's not contested in this case, Your Honor. So just a couple more points. The Supreme Court, when it decided Messer, if you look at that, it has – and you read all of the language in that case, there's nothing in there that talks about the rights of a judicial lien creditor. What they talk about are the rights of a bona fide purchaser for value. So – If we ruled your way and the subsequent legislation had never happened, does that sort of undermine the impact of Messer entirely, or are there some cases – No, I think Messer is still valid with respect to – Still valid, but why can't they always go under the judicial lien provision rather than the bona fide purchaser? Are there some circumstances where they can't do that? It's kind of interesting, Your Honor. There seems to be a – If you're dealing with a mortgage, I'm not sure that you could – I think the trustee could always use 544A1 to challenge a mortgage. What I'm not sure of is whether or not if you had a defective deed, there seemed to be case law that says that Ohio would treat that differently. What you're saying basically then is that all that business in Messer, if it hadn't been in the absence of the later legislation that's not before us, was really a tempest in a teapot. I think so, Your Honor. It wouldn't accomplish anything. I think it – well, for Judge Caldwell it did because he found that the trustee didn't have the power to invalidate the mortgage. You're disagreeing with Judge Caldwell. That's correct. I think that Judge Walters and the BAP had it right. What I'm saying is you're now agreeing that that means that all that Messer litigation was tilting against windmills and had no real effect on parties' rights with respect to mortgages. That's correct, Your Honor. That's correct. So I would urge this Court to affirm the BAP decision, which also affirmed Judge Walters. Thank you. Thank you, Your Honors. A couple things. The White case was decided in the late 1800s. It has effectively been overruled by two later Supreme Court cases. One is Basil v. Vincello, cited in our briefs where the Court said a judgment lien creditor is not a bona fide purchaser for value, and the Dow case, I think, from 1912, which said the same thing. The distinction we have to make with White is the judgment creditors in that case were actually that. We didn't pass the judgment lien statute until 1927, and of course the recording statutes were not in place with regard to BFP status in the 1800s. There was a form of them, but because we didn't have the judgment lien statute at that point, we would not have had bona fide purchaser status for judgment creditors in the 1800s. So it's our view that White has effectively been overruled. With regard to, I do agree that Judge Walter's decision was deftly written. The problem with it is it's simply just wrong. I'm sorry to be that blunt. But Judge Walter relied on the plethora of old, single witness, bad acknowledgement cases that are no longer the law in Ohio because of 1301-401. And Judge Caldwell, I think, recognized the fact that constructive notice defeats all those powers. That's why we had periandery. And I think that's what kind of the trap that the bat fell into is how do we say priority? Well, you know, you have to cut the pieces of the puzzle together to get to priority. So while I have great respect for Judge Walter's decision, I think it was just incorrectly decided. This issue with... Judge Caldwell is the bankruptcy judge on... Messer, Your Honor. With regard to Messer, the Supreme Court didn't address bona fide purchasers in Messer. The decision applies to the whole world. I argued that case before the Supreme Court. There was no inference that it only applied to bona fide purchasers. And the great irony is even if we accept Apley's argument that it only applied to bona fide purchasers, judgment lien creditors aren't entitled to notice at all. So we could say, well, Messer only applies to BFPs, but judgment lien creditors don't get the benefit of being a BFP under Ohio law. So I think the key to Messer is the fact that Justice Lansing said twice in the decision, look, this statute doesn't conflict with 530125A and it doesn't conflict with any other provision of the Ohio revised code. So that leaves us with the conclusion that Judge Caldwell reached in the bankruptcy court case, which is it does apply to judgment lien creditors. If there are no other questions, since I've had none this morning, basically, thank you very much. Appreciate the court's time. Thank you, counsel. The case will be submitted. This is not an area of the law that stirs us up too much. I understand that, Your Honor. Thank you for letting me go first in that regard.